COOPER ET AL. *v.* BELL ET AL.

[75 South. 767, Division A.]

1. WILLS. *Contest. Testimony of interested party.*

In a contest to declare a codicil to a will void, a daughter of the testator cannot testify to the alleged mental incapacity of her father at the time of its execution, where the result of setting aside the codicil would be to give her an increased interest in his property, since in such case she was seeking to establish her own claim against the estate of a deceased person, which originated in the lifetime of such person.

2. APPEAL AND ERROR. *Harmless error. Exclusion of evidence. Ruling favorable to appellant.*

An appellant cannot complain of a ruling of the court in the exclusion of evidence, where such ruling was in her favor.

APPEAL from the chancery court of Oktibbeha county. HON. A. J. MCINTYRE, Chancellor.

Bill by Mrs. Sallie Cooper and others against J. G. Bell and others, to contest codicil to will of J. G. Bell, Sr. From a decree sustaining the codicil, complainants appeal.

The facts are fully stated in the opinion of the court.

*W. W. Magruder,* for appellant.

The sixth and seventh assignments of error may be treated together, involving as they do the inquiry as to whether or not testator's daughter, an heir at law, is a competent witness to establish undue influence and

mental incompetency in the alleged execution of wills or codicils.

The chancellor held that appellant was not a competent witness to show either undue influence or mental incapacity. This ruling was made under the supposed authority of *Whitehead* v. *Kirk,* 104 Miss. 776.

We insist: First, that the decision and opinion in *Whitehead* v. *Kirk,* does not justify such ruling and is no authority whatever therefor. Second, that if such ruling is justified by the Whitehead-Kirk case, then the Whitehead-Kirk case is a veritable Trojan Horse that will sooner or later destroy the citadels of the law.

This court held in *Whitehead* v. *Kirk* that Mrs. Kirk was not a competent witness to establish against her husband's estate a certain claim, to wit: the permanent and incurable insanity of her husband by virture of which, she became his sole irrevocable, statutory heir-at-law. That is a vitally different proposition from the question involved in the instant case. There is not even close analogy in principle between the issues involved in the two cases. To give the decision in the Whitehead case the construction that was applied in the instant case would play havoc with the fixed rules of law in our state governing property rights by testamentary disposition from time immemorial.

"The statutes excluding evidence in actions by or against representative or relating to transactions with a decedent are usually held not applicable in proceedings for the probate or contest of a will." 40 Cyc., p. 2266 (6).

"The rule of the common law excluding devisees and other parties in interest and the modern statutes making them competent upon conditions of relinquishing their claim under the will, apply to attesting witnesses only, and not to devisees or legattes who might be called generally as witness in a will contest." Borland on Wills, p. 69.

"In proceeding for the probate of a will, the proponent is a competent witness." *McIntyre* v. *McIntyre,* 120 Ga. 67. 102 Am. St. Rep. 71.

A "legatee is not incompetent because of interest to testify to the execution of the will." *In re Whelock's Will,* 76 Ver. 235.

"Devisees are competent witnesses in a suit over the probate of the will." *Carmical* v. *Carmical,* 104 S. W. 1037, 27 Ky. Law Rep. 171.

"The executor of a will who is also the principal legatee and devisee under the will is a competent witness to sustain the will." *Kelly* v. *Miller,* 39 Miss. 17.

"At the trial of an issue, *devisavit vel non,* the contestant or the proponent although the principle legatee can testify in support of the will." *Tucker* v. *Whitehead,* 59 Miss. 594.

"An administrator although a distributee of his intestate's estate is a competent witness to establish a claim of his intestate against the estate of another decedent. He is not incompetent under Code 1892, section 1740, providing that a person shall not testify as a witness to establish his own claim or defense against the estate of a deceased person etc." *Cock* v. *Abernathy,* 77 Miss. 872.

"Where in a contest as to the validity of a will, the executors had offered the will proving its execution and testator's testamentary capacity, and contestants had offered testimony tending to show that the will was the result of undue influence and had rested their case, it was error to exclude the testimony of the testator's widow in contradiction thereof, that there had been no undue influence by her or other beneficiaries." *Jamison* v. *Jamison,* 92 Miss. 469.

In this case, Mrs. Jamison was a beneficiary under the will, and although it is a question as to the order of introduction of evidence the court said it was a fatal error not to allow Mrs. Jamison to testify in contradiction of testimony as to undue influence.

The decision in *Whitehead v. Kirk,* certainly does not extend to the inquiry now under consideration. Its facts are absolutely different. A will or a codicil is not a "claim" originating in the lifetime of a decedent. No legitimate construction of that decision will authorize the disqualification of heirs-at-law, also devisees, to testify either to or against the exercise of undue influence in the execution of a will.

The validity of the original will, executed by J. G. Bell on the 25th day of September, 1912, was not an issue in this case. That was recognized and conceded by the pleadings in the case. No question of intestacy was involved in the consideration of the alleged codicil. With the codicil sustained, the original will was thereby modified to that extent. With the codicil broken, the original will thereby became "the law of the case."

What was the object in this situation of appellant's case? Its sole purpose was the establishment of her father's original will. Is a will itself a "claim against the estate of a deceased person which originated during the lifetime of such deceased person?" The Whitehead-Kirk case certainly announces no such preposterous doctrine as this, and no other authority in our State even squints at it.

In 51 L. R. A. (N. S.) 187, the Whitehead-Kirk case is published with extensive editorial comment and citation. On page 206, it is pointed out that the principle declared in the Whitehead case stands alone without support in authority from any other state. If then Mississippi alone has reached such a conclusion as is announced in *Whitehead* v. *Kirk,* with less statutory authority therefor than exists in any other state, as is also declared on page 205, would it be wise to extend the application of such a decision.

*G. Odie Daniel,* for appellee.

Appellant discusses the sixth and seventh assignment of error together and assails the elaborate and carefully

114 Miss.—49

prepared case of *Whitehead* v. *Kirk,* 104 Miss. 776, with all its splendid references. While she (her counsel) first undertakes to show the lack of harmony of facts in the two cases, he later abandons that idea, and reveals his desires and objects by making a direct appeal for the reversal of that case. If this court reverse that case, then I am sure this suit will have to be reversed, as the two cases are "on all fours"; but every important state case is considered in that splendid opinion, their place fixed and apparently the whole field fully discussed, and the law settled so far as this state is concerned. The court has given the Whitehead case, with the suggestions of error included, as full and careful consideration as most any case given the public in recent years. There was not a single member of the court to dissent. Judge Cook, in writing that opinion in which he was supported by the whole court, and aided by some of the most learned and painstaking members of the bar of the state, gave place to the case of *Kelly* v. *Miller,* 39 Miss. 17, quoted by appellant, and explained that the Kelly case was decided under article 45, page 434, Code 1857, and has no place in this suit.

Counsel says that the Whitehead case cannot be likened to this. But in that case the court said in reference to Mrs. Kirk's testimony: "The effect of Mrs. Kirk's testimony is to make it impossible for any act of Mr. Kirk to deprive her of a clear title to his estate no matter what may be the equities of the case. If she could succeed in convincing the jury that her husband was incurably insane at and before the execution of the will, her *status* is conclusively fixed.

"Nobody would contend that she was competent to testify that Mr. Kirk (her husband), conveyed his property to her before his death, and that the deed of conveyance was properly acknowledged, before an officer now dead, and that the deed was lost, or destroyed. If she could establish such conveyance it would follow that Mr. Kirk did not own any property, and that this will conveyed nothing to his devisees. If she can establish

his insanity the same result is reached, and her claim to his property originated before his death," etc.

. Then discussing the statute, section 1917, Mississppi Code 1906: "The policy of the statute is to close the mouth of the living because death has sealed the lips of the dead."

Then when the case came up on suggestion of error the court said: (1) Because the wife of deceased was permitted to testify about the acts and words of her husband, done and said under the protection of confidential communications between husband and wife; (2) because the testimony of the wife was to establish her own claim to the estate of deceased, which originated during the lifetime of deceased.

"This case is again before the court on suggestion of error; it is claimed that the court erred in reversing the case at all; but, as only the ruling on the second ground is seriously and earnestly attacked, we will confine this opinion to that assignment of error. The briefs on file are the products of the brains of the most illustrious lawyers of the state, and every phase of this controversy has been thrashed over with consumate skill and ability. Nothing has been left unsaid which could have possibly thrown any light on the controversy" etc.

I take it that counsel assumes more than an Herculean task when he asks a reversal of this case, or seriously undertakes to show that the exact principles settled in the Whitehead case are not now before the court on this appeal. If Mrs. Cooper could establish that testator was so mentally weak from illness that he did not know what he was doing, or wanted to do, then the original will would stand, and thereby she would receive a larger share of her father's estate than if the codicil should stand—hence the analogy.

Most of the law quoted in appellant's brief is from text-books and other courts which I shall not discuss; but the case of *Kelly* v. *Miller,* 39 Miss. 17, and *White-*

*head* v. *Tucker,* 59 Miss. 594, were fully explained by the court and their place in our law fixed; and as for such other Mississippi cases as counsel refer to I shall console myself by quoting further from the Whitehead case.

"We do not undertake to harmonize the decisions of this court construing section 1917 of the Code, but content ourselves with deciding that Mrs. Kirk's evidence was to establish her claim to the estate of her deceased husband, within the meaning of the statute."

It may not be going too far however to say that the case of *Jamison* v. *Jamison,* 92 Miss. 468, is not in point at all. In that case the trial court ruled that Mrs. Jamison could not testify "in rebuttal" and throughout the brief of counsel, May, Flowers and Whitfield, the question presented in this suit was not discussed, nor was it mentioned in the opinion of the court.

Smith, C. J., delivered the opinion of the court.

J. G. Bell, Sr., who died on the 7th day of December, 1913, left surviving him four children, to wit, James G. Bell, Jr., Mrs. Sallie Rutland, Mrs. Sallie Cooper, and R. R. Bell. On the 28th day of September, 1912, he executed a last will and testament by which he left the major portion of his property to Mrs. Ruthland, Mrs. Cooper, and R. R. Bell, bequeathing to J. G. Bell, Jr., a nominal legacy of $1. On the 13th day of June, 1913, according to the verdict of the jury in the court below, he executed a codicil by which J. G. Bell, Jr., was admitted to an equal share in the estate with his brother and sisters; that is, to each he devised a one-fourth interest therein. After the death of Bell, Sr., this will and codicil were duly admitted to probate, whereupon Mrs. Cooper exhibited her bill in the court below against her sister and two brothers praying that the codicil be declared void for two reasons: First, its execution was the result of undue influence exerted upon the testator by J.

G. Bell, Jr., Mrs. Rutland and others; and, second, that at the time of its execution the testator was mentally incompetent. In due course the cause came on to be heard on an issue of *divisavit vel non.* On the first issue the court granted a peremptory instruction, of which no complaint is here made, and the second was submitted to the jury which returned a verdict sustaining the codicil, and there was a decree accordingly. Complainant offered herself as a witness to prove the alleged mental incompetency of her father at the time of the execution of the codicil, but on objection by defendant this evidence was excluded, and this ruling of the court is presented to us by appellants' principal assignment of error. In *Whitehead* v. *Kirk,* 104 Miss. 776, 61 So. 737, 62 So. 432, 51 L. R. A. (N. S.) 187, Ann. Cas. 1916A, 1051, the testator had executed a will by which one-half of his property only was left to his widow who was his sole statutory heir and entitled to the whole of the testator's property in event the will was invalid. The will was assailed on the ground of the testator's insanity, and the widow, who offered herself as a witness to establish that fact was not permitted to testify for the reason that she was seeking to establish her own claim against the estate of a deceased person which originated in the lifetime of such person. We see no reason why the rule announced in that case should not govern here. True it is that the witness here offered was not the widow, but was a daughter. True it is also that the nullification of the codicil assailed operated to advance the interest of the witness after a different method, viz. in the one case by her restoration to a pre-existing right as inchoate legatee under a previous will, and in the other, to a pre-existing right as inchoate statutory heir still the effect of a successful attack on the will by the witness offered was in either case essentially the same and the thing sought was the same. In *Whitehead* v. *Kirk,* Mrs. Kirk was offered in order to nullify her husband's will, which being done, the property interest which that will carried to the White-

heads would, by her statutory heirship, devolve on her. In the case at bar Mrs. Cooper was offered in order to nullify the codicil alleged to. have been executed by her father, which being done, the original will would thereby be reinstated and the property which the codicil carried to J. G. Bell, Jr., would come to herself, R. R. Bell, and Mrs. Rutland. In other words, the direct effect of her evidence, as would have been the direct effect of the evidence of Mrs. Kirk in *Whitehead* v. *Kirk,* would be to establish her own claim to a larger portion of the testator's estate. In each case that result was sought to be reached by an effort to prove exactly the same fact; that is, the testator's mental incapacity at the time of the preparation and execution of the will. It follows, therefore, that the court below committed no error in excluding this evidence.

Appellees offered to prove by Mrs. Rutland that the testator was mentally sound at the time of the execution of the codicil, and her evidence was not objected to by appellant, but was excluded by the court of its own motion, and when the witness was tendered to counsel for appellant he was not permitted to examine her relative to that fact. This evidence was offered by appellees upon the theory that the witness was not seeking to establish any claim of her own against the testator's estate, but on the contrary testifying adversely to any claim she might have under the original will. This ruling of the court cannot be complained of by appellant for the reason that whether right or wrong it was in her favor and against appellee.

We find no reversible error in the other matters complained of.

*Affirmed.*